IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DORIS LOLLIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 4967 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| PATRICK R. DONAHUE, in his capacity as Postmaster General of the United States, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Doris Lollis, a long time employee of the United States Postal Service, sued its Postmaster General (together, "the Postal Service"), alleging that her supervisors discriminated against her on the basis of her age and gender, and then retaliated against her after she complained about the discrimination to the Postal Service's Equal Employment Opportunity (EEO) office. In her summary judgment papers, Lollis distills her claims to a conspiracy involving three of her supervisors aimed at depriving her of training opportunities and overtime because of her EEO activity. The Postal Service asserts that all but one of Lollis' claims are either time-barred or unexhausted, and that the Postal Service did not impose an adverse employment action with respect to that final claim. For the following reasons, the Court grants the Postal Service's motion for summary judgment (Doc. 48.)

I.  **MATERIAL UNDISPUTED FACTS**

Lollis has worked for the Postal Service since 1976, serving as a mail classification clerk since 2003. (Pl. 56.1 Resp. ¶ 1.) During the period relevant to this suit, Lollis performed postage payment reviews for periodical customers. (*Id*.) Before this suit, Lollis filed three separate

administrative complaints of discrimination with the Postal Service's EEO office, one in 2007and two in 2008. (*Id*. at ¶ 2.) In the 2007 complaint, Lollis complained that her attendance records were incorrect; Lollis and the Postal Service mediated and settled that dispute. (*Id*. at ¶ 3.) In her first 2008 complaint, Lollis alleged that her superiors had discriminated against her on the basis of her gender and retaliated against her by placing her on off-duty status after an altercation with another employee. (*Id*. at ¶ 4.) The Postal Service issued a final decision finding no discrimination or retaliation in late December 2008, and Lollis received notice of that decision, which informed her that she had 90 days to file suit in district court, in January 2009. (*Id.*)

In her second 2008 complaint, Lollis alleged that her supervisors discriminated her by: (1) assigning her work outside her job title; (2) not properly training her; (3) denying her overtime opportunities; (4) maintaining incorrect attendance records; (5) passing her over for a work cubicle; (6) not selecting her to be an acting supervisor; (7) gossiping about her; and (8) giving her a pre-disciplinary interview in October 2008. (*Id*. at ¶ 5.) As required, she met with a Postal Service EEO counselor for pre-complaint counseling on October 2, 2008 before filing her formal complaint. (*Id*.) The Postal Service's EEO office accepted for investigation Lollis' two claims regarding her insufficient training and overtime; the office dismissed Lollis's remaining issues for various reasons, including that they were not sufficiently severe or pervasive to state a claim for hostile workplace or harassment and, in any event, some of them were not brought within the 45 day window specified by 29 C.F.R. § 1614.107(a)(1). (*Id*. at ¶ 6; Doc. 50-4 at 7-15.) In February 2009, during the investigation into the two accepted claims, Lollis executed an affidavit where she answered various questions from the Postal Service under oath. (Pl. 56.1 Resp. ¶ 6.) That affidavit states, in relevant part:

[Question No. 5] Was the management official listed in [a previous answer] aware of your sex? If so, how do you know?

**[Answer from Lollis] Yes, all management officials were aware of my sex, because of my female voice, hair, clothes and accessories. The issue of sex discrimination pertained to one of the issues that was dismissed. Sex discrimination is not an allegation with the accepted issues . . . .**

[Question No. 6] Was the management official listed in [a previous answer] aware of your age? If so, how do you know?

**[Answer from Lollis] I am not aware if management [sic] listed in [the previous answer]. Management was aware of my approximate age by "common knowledge." Everyone in the unit is over the age of 50. Age discrimination is not an allegation to the accepted issue. The issue of age discrimination pertained to one of the issues that was dismissed.**

\* \* \*

[Question No. 17] Why do you feel your sex was a factor in you not being properly trained to do the functions of your job responsibilities?

**[Answer from Lollis] Sex was not a factor. It was a factor in the dismissed issues. See #5.**

[Question No. 18] Why do you feel your age was a factor in you not being properly trained to do the functions of your job responsibilities?

**[Answer from Lollis] Age was not a factor. It was a factor in the dismissed issues. See #6.**

\* \* \*

[Question No. 22] Why do you feel your sex was a factor in you being denied overtime opportunities?

**[Answer from Lollis] Sex was not an issue in the accepted issue. See #5.**

[Question No. 23] Why do you feel your age was a factor in you being denied overtime opportunities?

> **[Answer from Lollis]** Age was not an issue in the accepted issue.
> See #5.

(Doc. 50-5 at 3, 5-6.)[1]

At the Postal Service facility where Lollis works, the union contract governing overtime provides that employees sign up on a "overtime desired" list, and then overtime is distributed "by craft." (Pl. 56.1 Resp. ¶ 11; Doc. 50-8, American Postal Workers Union contract.) In other words, bulk mail clerks were in one pool for overtime and mail classification clerks like Lollis in another. (*Id.*) In that same affidavit quoted above, when asked to "describe in detail" what caused her to file the discrimination complaint, Lollis mentioned only one specific instance where she was denied overtime, August 18, 2008. (Pl. 56.1 Resp. ¶ 10.) During the relevant time around August 18, 2008, only one other mail classification clerk, Darlene Hester, six years more senior than Lollis, signed up on the "overtime desired" list. (*Id.* at ¶ 11.)[2] The Postal Service's records for the pay periods between June 28, 2008 and October 17, 2008 (the time period associated with the relevant third

---

[1] In response to another question on the affidavit, Lollis wrote: "Again, since the overtime is given to women in my age group, I am not raising the sex and age discrimination allegation." (Doc. 50-5.)

[2] In her Local Rule 56.1 response, Lollis did not dispute how the overtime system worked or that Hester signed up for overtime and received it over Lollis. (See Pl. 56.1 Resp. ¶ 11.) Though Lollis disputes that Hester was a mail classification clerk like Lollis, she cites nothing in support of that statement in her response and does not include anything regarding Hester in her Local Rule 56.1(b)(3)(C) statement of additional facts. Consequently, the Court deems admitted the Postal Service's assertions regarding Hester. *See* L.R. 56.1(b)(3)(B) (requiring responses "in the case of any disagreement," to include "specific references to the affidavits, parts of the record, and other supporting materials relied upon."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (finding "[b]ecause of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). Further, if Lollis wanted to affirmatively assert that Hester is not a proper point of comparison because she was a different type of clerk, or that another employee, Donald McLaren, was also a mail classification clerk (not a bulk clerk), Lollis should have put forth additional Local Rule 56.1(b)(3)(C) facts. *See Woods v. Von Maur, Inc.*, No. 09 C 7800, 2011 WL 3796724, at *4 (N.D. Ill. Aug. 24, 2011) (laying out how to affirmatively present evidence as a non-movant under Local Rule 56.1). Similarly, at her deposition Lollis claimed that she has not received overtime when she should have in other instances since August 18, 2008 (Doc. 52-1, Lollis Dep. at 35-36), but does not include any specific instances in her statement of additional facts.

quarter overtime list) indicate that Lollis worked overtime on six separate occasions while Hester worked none. (Pl. 56.1 Resp. ¶ 12.) Further, no clerk in Lollis' unit (whether bulk mail or mail classification) worked overtime on August 18, 2008. (*Id*.) As for training, according to Chris Paladin, Lollis' supervisor beginning in June 2008, and the Postal Service's records, Lollis received 270 hours of training in her unit since August 2003. (Pl. 56.1 Resp. ¶ 12.) The only training Paladin set up in 2008 was in December, and Lollis attended that training. (Pl. 56.1 Resp. ¶ 13).[3] Finally, Lollis' supervisors, concerned about her attendance, called her to a pre-disciplinary meeting on October 2, 2008. (Def. 56.1 Facts ¶ 9.)[4] The purpose of a pre-disciplinary hearing is to allow a supervisor to question an employee about a potential issue to help determine whether the employee is breaking the rules or whether the employee should be disciplined. (*Id.*) Lollis was not disciplined for attendance problems after that meeting. (*Id*.)

On May 13, 2009, the Postal Service issued its final decision finding no discrimination as to the investigated issues, and Lollis received that determination on May 18, 2009. (Pl. 56.1 Resp. ¶ 6.) That notice told Lollis she had 90 days to file a complaint in district court if she disagreed with the Postal Service's decision. (*Id.*)[5]

---

[3] Lollis asserts there was other training but cites nothing in support of her denial.

[4] Lollis did not respond to the Postal Service's ninth statement of fact and it is deemed admitted. (*See* Doc. 52 at 4-5.)

[5] Lollis offered only two additional facts in opposition to summary judgment, both of which are disputed by the Postal Service. The first is that she felt that she was singled out for disparate treatment and that her manager retaliated against her when she was placed on off-duty status after her dispute with her fellow employee. (*See* Def. 56.1 Facts ¶ 1 (citing Lollis Dep. at 47-52).) The second was that Paladin was aware of previous discipline of Lollis. (*See* Def. 56.1 Facts ¶ 2 (citing Paladin Dep. at 28-30).) More pertinently, Paladin testified that she was not aware of Lollis' previous EEO activity when she became her manager in June 2008, but became aware of it sometime later. (Paladin Dep. 33-34.)

## II. STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court may "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'"). Lollis, as the party opposing the motion for summary judgment, "get[] the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011).

## III. DISCUSSION

Because only some of Lollis' claims are timely, as detailed below, the Court lays out the six counts of Lollis' operative complaint (Doc. 28). In Count I, Lollis alleges she was discriminated against because one or more of her managers, due to her age: (1) denied her training opportunities;

(2) denied her overtime opportunities; (3) entered incorrect information on her attendance records in May 2008; (4) failed to give her a work cubicle in July 2008; (5) bypassed her for temporary supervisor assignments in July 2008; and (5) gave her a pre-discipline interview in October 2008. In Count II, Lollis alleges that her managers discriminated against on the basis of her gender when they denied her training and overtime opportunities. In Count III, Lollis alleges she was denied training and overtime opportunities, given a pre-disciplinary interview in October 2008, and subject to various other discipline in retaliation for her previous EEO activity. In Count IV, Lollis asserts that her managers discriminated against her on the basis of her age and gender when one of them put her in off-duty status pending removal after her altercation with another employee. Count VI alleges retaliation with respect to the same incident. Finally, Count V, a variation on Count IV, alleges Lollis was disciplined more severely than her male co-workers when she was placed on off-duty status.

### A. Untimely Claims

A federal employee like Lollis who believes she has been discriminated against must consult an EEO counselor at her respective agency within 45 days of the allegedly discriminatory action. *See* 29 C.F.R. § 1614.105(a), (b); *see also Smith v. Potter*, 445 F.3d 1000, 1006-07 (7th Cir. 2006) (laying out the 45-day rule and noting an employee's failure to act within 45 days "equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII"). Lollis met with an EEO counselor on October 2, 2008, meaning that all of the issues raised in Count I by Lollis that occurred earlier than August 18, 2008—incorrect attendance records in May 2008 and the cubicle and acting supervisor issues in July 2008—are not timely. Similarly, Lollis had 90 days to file a

7

complaint in district court when she received the Postal Service's decision with respect to her first 2008 EEO complaint regarding her off-duty status following the altercation with the employee. *See* 29 C.F.R. § 1614.407. It is undisputed that Lollis received that final decision in January 2009, but she did not file suit until August 2009, well after the 90 day window closed. Consequently, all the claims based on her off duty status (Counts IV, V and VI) are untimely as well. Only the claims regarding Lollis' lack of training and overtime opportunities (part of Count I and Counts II and III) are timely.

### B. Timely Claims

Lollis asserts that her managers denied her training and overtime opportunities on three grounds: her age, her gender, and her previous EEO activity. Her assertions of discrimination based on age and gender are easily set aside. During the course of the investigation, Lollis admitted in several places in her affidavit, under oath, that age and gender were not factors in why she did not received proper training or overtime. She cannot disavow those explicit statements now, and the Postal Service is entitled to summary judgment on the remaining part of Count I and Count II as well. *See e.g., Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n. 5 (7th Cir. 2008) ("a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony."); *Lafary v. Rodgers Grp. Inc.*, 591 F.3d 903, 908 (7th Cir. 2010) ("a plaintiff cannot defeat a motion for summary judgment by contradicting deposition testimony with later filed contradictory affidavits.") (internal citation and quotation omitted).

That leaves Lollis' claim that her managers retaliated against her for previous EEO activity by denying her overtime and training opportunities and giving her a pre-disciplinary meeting in

October 2008.[6] Title VII forbids employers, including federal agencies, from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Lollis may employ either the direct or indirect method to prove her claim of retaliation. *See Szymanski v. Cty. of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006). Under the direct method, Lollis "must show through either direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008). Under the indirect method, Lollis may defeat the Postal Service's motion for summary judgment on her retaliation claim if shows (1) she engaged in a statutorily protected activity, (2) the Postal Service took a materially adverse action against her, (3) she was performing her job satisfactorily, and (4) she was treated worse than a similarly situated employee who did not complain of discrimination. *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009). If Lollis satisfies those elements, thus giving rise to an inference of retaliation, the burden shifts to the Postal Service to identify a legitimate, non-retaliatory reason for the employment decision. *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011). If the Postal Service offers a nondiscriminatory reason for taking the adverse employment action against Lollis, she must then show that a reasonable jury could conclude that reason is pretextual. *Id.*

Here, Lollis cannot show that she suffered an adverse employment action, and she cannot survive summary judgment under either the direct or the indirect method. A *materially* adverse

---

[6] In Count III of her complaint, Lollis mentions other discipline, including write-ups for time clock and sick-leave policy violations. To the extent this discipline is separate from in the pre-disciplinary interview discussed above, Lollis did not make this other discipline part of either of her 2008 EEO complaints, and she cannot assert it now. *See* 29 C.F.R. § 1614.105(a).

9

employment action—as opposed to a "trivial" harm—is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (noting that the anti-retaliation provision is meant to ensure "unfettered access to Title VII's remedial mechanisms"). To show an adverse employment action for his discrimination claim, Lollis must identify a "quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Lapka v. Chertoff*, 517 F.3d 974, 986 (7th Cir. 2008) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). "Not everything that makes an employee unhappy is an actionable adverse action." *Lapka*, 517 F.3d at 986.

As to training and overtime opportunities, Lollis fails to show an adverse employment action for lack of evidence: she failed to produce any evidence, other than her own belief or speculation, that her managers deprived her of overtime or training opportunities. She has not identified any specific training she missed. She does not dispute that there was only one training in 2008 and that she attended it. It is undisputed that the only specific day she identified as an instance where she was denied overtime—August 18, 2008—no one in her unit worked overtime. Similarly, it is undisputed that she worked overtime at other times around August 18, 2008, even though a more senior mail classification clerk did not work overtime during that period. The pre-disciplinary interview is not an adverse employment action as a matter of law. A reasonable worker would not be dissuaded from filing an EEO complaint because her supervisor asked her questions about her attendance. *See e.g.*,

*Barker v. YMCA of Racine*, 18 Fed. Appx. 394, 398 (7th Cir. 2001) (finding that a supervisor's questioning may have made the employee uncomfortable, but did not rise to the level of an adverse employment action). Indeed, it is undisputed that no discipline resulted from the interview.

Even if she could establish an adverse employment action, Lollis cannot establish a causal connection under the direct method or pretext under the indirect method. The casual connection requirement ensures that employees do not file EEO complaints in order to insulate themselves from later adverse employment actions. At best, Lollis established that her supervisors knew that she engaged in previous EEO activity; knowledge does not constitute causation. As for pretext, she has not shown that the Postal Service deviated from the union-negotiated overtime procedure, or that she needed more training to perform her duties. Nor has she shown that the pre-disciplinary interview was entirely unjustified.

In her opposition to the Postal Service's motion, Lollis does not dispute that many of her claims are untimely. Rather, Lollis asserts that three of Lollis' managers "conspired to deny her training opportunities and deny her overtime opportunities," and that they also conspired to get her fired from the Postal Service. (Doc. 51, Resp. Br. at 5.) Putting aside that such a conspiracy, if it existed, would not violate Title VII unless it was motivated by Lollis' age or gender (or another protected characteristic), Lollis has not put forth any evidence of a conspiracy, other than her own speculation and belief.

IV.     CONCLUSION

For the foregoing reasons, Donahue's motion for summary judgment (Doc. 48) is granted and final judgment entered in favor of the Postal Service.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: January 6, 2012